Stanley Keith BURKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 60757.

Court of Criminal Appeals of Texas,
En Banc.

April 11, 1979.

Rehearing Denied July 3, 1979.

E. Brice Cunningham and Walter L. Irvin, Dallas, for appellant.

Henry M. Wade, Dist. Atty., W. T. Westmoreland, Jr., Robert E. Whaley, Daniel P. Garrigan, Ron Poole and Mary K. Ludwick, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for capital murder. The jury returned affirmative answers to the special issues submitted at the punishment hearing pursuant to Article 37.071, Vernon's Ann.C.C.P. Accordingly, punishment was assessed at death.

The sufficiency of the evidence is not challenged. On August 10, 1977, the body of the deceased, an 'elderly man, was found in his bed. His face and skull had been beaten in, his throat had been slit and his abdomen had been cut open so that his intestines and bowels protruded. The house, in which he lived alone, had been ransacked and various items of property were discovered missing. A fingerprint, identified as one of appellant's, was found at the scene. A confession was introduced into evidence, in which appellant admitted that he killed the deceased and then stole various items of property over a three-day period. Other evidence was introduced which tended to connect appellant with the murder during the course of a burglary. Suffice it to say that the evidence of appellant's guilt of the offense is overwhelming.

Appellant did not testify in his own behalf, but presented a defense of insanity, by extensive use of both psychiatric and lay testimony. However, the jury rejected this defense.

In his first two grounds of error, appellant contends that the trial court erred in failing to quash his indictment because of the systematic exclusion of blacks, Mexican-

Americans and persons between the ages of 18 to 21, from the grand juries in Dallas County. Appellant relies upon *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). In *Castaneda,* the Supreme Court held that the defendant had established a prima facie case of racial discrimination in the selection of grand juries, by showing a disparity between the proportion of Mexican-Americans in the total population and the proportion called to serve as grand jurors over a significant period of time. Once a defendant makes such a showing, the Court held, the burden of proof shifts to the State to dispel the inference of intentional discrimination. Defendant Partida showed that the total population of his Texas county was 79.1% Mexican-American, but that over an eleven year period, only 39% of the persons summoned for grand jury service were Mexican-American. On the list from which the grand jury which indicted Partida was selected, 50% were Spanish-surnamed. This showing, without more, was held to establish a prima facie case of discrimination on the basis of race.

A hearing on appellant's motions to quash the indictment was held. Appellant's evidence of the alleged selective exclusion consisted of testimony taken in a hearing on this issue in another case, which evidence was stipulated to by the State. We hold that appellant has failed to establish a prima facie case of the selective exclusion of certain groups from Dallas County grand juries.[1]

■ With reference to the exclusion from grand juries of persons of the ages 18 to 21, appellant has failed to establish, *inter alia,* that such individuals constitute a distinctive group, comparable to racial minorities or gender-based classes. See *Castaneda v. Partida,* supra; *Curtis v. State,* 573 S.W.2d 219 (Tex.Cr.App.1978); *Carillo v. State,* 566

S.W.2d 902 (Tex.Cr.App.1978). Further, appellant has shown no disparity between the proportional representation of these individuals in the total population and the proportion called to serve as grand jurors over a significant period of time. See *Castaneda v. Partida,* supra; *Carillo v. State,* supra. A prima facie case of the selective exclusion of these individuals from grand juries has not been established.

■ With reference to the exclusion from grand juries of Mexican-Americans, appellant has failed to establish, *inter alia,* the proportional representation of these individuals in the total population in the county. See *Castaneda v. Partida,* supra; *Carillo v. State,* supra. Without considering other facts which appellant has proven or failed to prove, we hold that he has not established a prima facie case of the exclusion of these individuals.

■ With reference to the exclusion from grand juries of blacks, we hold that appellant has also failed to make out a prima facie case of discrimination. Again, there is insufficient evidence to show a statistical disparity between the percentage of blacks in the total population and the percentage of blacks called to serve. The *only* evidence of the total population in Dallas County and the percentage of blacks residing therein consisted of the following:

"Q. [defense counsel] Are you aware that the 1970 census for Dallas County said there were one million, three hundred twenty-seven thousand, three hundred twenty-one people in the county; and out of that, there were two hundred twenty thousand, five hundred twelve Negroes, which would roughly—if you want to take my figures—be about sixteen percent of the total population?

"A. [witness] I was aware there were two hundred thousand blacks in Dallas

---

1. The State maintains that appellant waived this ground of error by failing to challenge the array of the grand jury before it was impaneled. See Article 19.27, Vernon's Ann.C.C.P.; *Muniz v. State,* 573 S.W.2d 792 (Tex.Cr.App. 1978). We do not reach this issue, since the record reflects that, while the offense was committed before the impanelment, appellant's attorney was not appointed until a few weeks thereafter. Thus, it appears that appellant was without the assistance of counsel at the time when the grand jury array could have been challenged under Article 19.27, supra; cf. *Muniz v. State;* supra.

County, but I couldn't get down to the specifics."

We cannot hold that this statement by the witness was sufficient proof of the total population of Dallas County, generally, or of the total number of blacks therein, specifically. Thus, appellant has failed to establish the foundation upon which to show a disparity. Given this as the basis for our holding, we need not comment upon the method or sufficiency of proof to show the total number of blacks who served or were called to serve as grand jurors over a significant period of time. Since appellant has failed to make a prima facie case of discrimination under *Castaneda v. Partida,* supra, these grounds of error are overruled.

In his third ground of error, appellant complains that the admission into evidence of eleven photographs constituted reversible error. He argues that the prejudicial and inflammatory effects of these photographs outweighed the probative value of such, and that the trial court abused its discretion in overruling his objections thereto.

The complained-of photographs depict the decomposing body of the deceased after he had been killed in a very brutal manner. Other photographs depict the room in which the body was found, which was spattered with blood and bits of human tissue. In *Martin v. State,* 475 S.W.2d 265 (Tex.Cr.App.1972). We feel that if a photograph was competent, material and relevant to an issue at trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, or unless it is offered solely to inflame the minds of the jury. If a verbal description of the body and scene of the crime would be admissible, a photograph depicting the same is admissible. *Martin v. State,* supra; *Welch v. State,* 576 S.W.2d 638 (Tex. Cr.App.1979); *Shannon v. State,* 567 S.W.2d 510 (Tex.Cr.App.1978); *Denney v. State,* 558 S.W.2d 467 (Tex.Cr.App.1977); *Cerda v. State,* 557 S.W.2d 954 (Tex.Cr.App.1977).

In the instant case, verbal descriptions of the body of the deceased and of the scene of the murder were admissible. Therefore, the trial court did not abuse its discretion in admitting the photographs. See *Martin v. State,* supra; *Welch v. State,* supra; *Denney v. State,* supra; *Cerda v. State,* supra. No error is shown, and this ground of error is overruled.

In his fourth ground of error, appellant contends that the trial court erred in admitting into evidence a written confession signed by appellant. He contends that the confession was involuntary and that it was made only as a result of threats and coercion.

The record reflects that a hearing was held out of the presence of the jury. Officer Truly Holmes of the Dallas Police Department testified that on August 30, 1977, he took appellant from the county jail to his office, where they talked. Officer Holmes testified that he told appellant that he was a police officer investigating a murder, that appellant had the right to remain silent, that anything he said could be used against him in court, that he had the right to an attorney, appointed if necessary, during the questions, and that he could terminate the interview at any time. Officer Holmes stated that appellant said he understood his rights and wanted to waive them.

According to Officer Holmes, appellant first denied that he committed the offense. Holmes stated that he then told appellant of the fingerprint which was found at the scene of the murder. Holmes testified that appellant then became "disgusted" with himself for having left a fingerprint at the scene, and then said that he would talk about it. Appellant then gave a statement in which he admitted that he entered the deceased's house by cutting a screen, beat the deceased in the head with a hammer some thirty times, slashed open his throat and stomach, and then stole property over a three-day period. This statement was then typed and copy given to appellant, after which Officer Holmes read it aloud to appellant, including the constitutional [2] warnings. Holmes stated that he asked appel-

2. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

lant if there were anything which he wanted changed, and that appellant said that the statement was absolutely the truth. Appellant then signed both pages of the statement, in the presence of a witness.

Officer Holmes denied that he ever promised anything to appellant, or coerced him, or made offers of leniency or favors to him, or used any kind of persuasion or coercion in order to induce appellant to make a statement. He denied that he ever threatened appellant in any way.

Appellant testified that Officer Holmes told him that he knew that appellant had committed the crime, and that if he did not cooperate, he would tell the jury and see that appellant "got the electric chair." Appellant further stated that Holmes told him that if he did cooperate, then he would not get the electric chair. He testified that it was only because of this threat that he made and signed the statement.

Officer Holmes denied that he ever made such a threat. He stated that *after* appellant signed the confession he (appellant) inquired as to the range of punishment for the offense. Holmes stated that he told appellant that the range of punishment included death. He testified that in response to appellant's inquiries he told appellant that death could either be by electrocution or lethal injection.

**3.** Section 12.31(b), supra, provides:
 "Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact."

**4.** In *Witherspoon,* the Supreme Court of the United States stated:
 "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."
 The Court further stated:

 Thus, it appears that appellant's testimony concerning the circumstances under which he made the confession was disputed by Officer Holmes. This gave rise to a question of fact which the trial court, as the trier of fact, resolved against appellant in his findings of fact and conclusions of law. At a hearing on the voluntariness of a confession, the trial judge, as the trier of fact therein, is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Williams v. State,* 566 S.W.2d 919 (Tex.Cr.App.1978); *Myre v. State,* 545 S.W.2d 820 (Tex.Cr.App. 1977); *McKittrick v. State,* 541 S.W.2d 177 (Tex.Cr.App.1976); *Aranda v. State,* 506 S.W.2d 221 (Tex.Cr.App.1974). In the instant case, the trial judge resolved the questions of fact against appellant, and the findings are supported by evidence adduced at the hearing. Therefore, appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant complains of the trial court excusing prospective jurors who were disqualified under V.T.C.A. Penal Code, Section 12.31(b),[3] without first determining whether they were qualified under the doctrine of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[4]

 In a capital murder case, a prospective juror may be disqualified under either *Witherspoon* or Section 12.31(b), or both. *Bodde v. State,* 568 S.W.2d 344 (Tex.Cr.

"Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position."
The Court elaborated in *Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969):
 "[i]t is entirely possible that a person who has 'a fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law—to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case."
Further, in *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976) the Court reaffirmed the *Witherspoon* doctrine and held that no death penalty can stand if a single venireman is excluded in violation of that doctrine.

App.1978); *Brock v. State,* 556 S.W.2d 309 (Tex.Cr.App.1977); *Moore v. State,* 542 S.W.2d 664 (Tex.Cr.App.1976). A prospective juror who is disqualified under *Witherspoon* need not be disqualified or even questioned under Section 12.31(b); conversely, a prospective juror who is disqualified under Section 12.31(b) need not be disqualified or questioned under *Witherspoon. Bodde v. State,* supra; *Hughes v. State,* 563 S.W.2d 581 (Tex.Cr.App.1978); *Hughes v. State,* 562 S.W.2d 857 (Tex.Cr.App.1978); *Burns v. State,* 556 S.W.2d 270 (Tex.Cr.App.1977); *Moore v. State,* supra. Therefore, there was no error in the trial court's excusing prospective jurors who were disqualified under Section 12.31(b), without first allowing inquiries into their qualification under the *Witherspoon* doctrine.

■ Further, appellant's contention that Section 12.31(b) is unconstitutional in light of *Witherspoon v. Illinois,* supra, has been decided adversely to him. This Court has consistently held that the statutory scheme for the selection of jurors in capital cases in Texas comports with the constitutional requirements of *Witherspoon. Adams v. State,* 577 S.W.2d 717 (1979); *Hughes v. State,* 563 S.W.2d 581 (Tex.Cr.App.1978); *Hughes v. State,* 562 S.W.2d 857 (Tex.Cr. App.1978); *Freeman v. State,* 556 S.W.2d 287 (Tex.Cr.App.1977); *Burns v. State,* supra; *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr.App.1976); *Moore v. State,* supra. This ground of error is overruled.

In his sixth ground of error, appellant contends that the trial court erred in admitting into evidence an oral statement made by appellant to Police Officer Holmes. Appellant does not direct our attention to the admission of any such oral statement in the record, and our reading of the record has revealed no such statement was admitted. The gist of appellant's complaint appears to relate to the admission into evidence of several articles, stolen from the deceased's house, which perhaps appellant contends are the "fruits" of such statement. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ The record reflects that immediately after taking appellant's written confession Officer Holmes took appellant to appellant's house to recover evidence referred to in the written statement. The record does not reveal what, if any, oral statements were made to Officer Holmes of which appellant now complains. Further, the record does not reflect that these items recovered were the "fruits" of any statements other than those contained in the written confession. Since we have previously held that the written confession was properly admitted, and since it does not appear that the items recovered were other than the "fruits" of this confession, this ground of error is overruled. *Brantley v. State,* 522 S.W.2d 519 (Tex.Cr.App.1975); *Gutierrez v. State,* 502 S.W.2d 746 (Tex.Cr.App.1973).

There being no reversible error, the judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

We granted appellant's leave to file motion for rehearing in order to further consider appellant's contention that the grand jury Commissioners in Dallas County, who appoint the grand jurors, were improperly selected over a period of time. This ground of error is multifarious, and contains no citations to the record, and therefore is not in compliance with Article 40.09, Section 9, Vernon's Ann.C.C.P. However, in the interest of justice, it shall be reviewed.

Appellant now complains that the method of selection of the grand jury Commissioners is unconstitutional, that grand jury Commissioners were not selected in compliance with Article 19.01, Vernon's Ann.C. C.P., and that there has been discrimination in the selection of the Commissioners.

Article 19.01, supra, provides that:

"The district judge, at or during any term of court, shall appoint not less than three, nor more than five persons to perform the duties of jury commissioners, and shall cause the sheriff to notify them of their appointment, and when and where they are to appear. The district judge shall, in the order appointing such

commissioner, designate whether such commissioners shall serve during the term at which selected or for the next succeeding term. Such commissioners shall receive as compensation for each day or part thereof they may serve the sum of Ten Dollars, and they shall possess the following qualifications:

1. Be intelligent citizens of the county and able to read and write the English language;
2. Be qualified jurors in the county;
3. Have no suit in said court which requires intervention of a jury;
4. Be residents of different portions of the county; and
5. The same person shall not act as jury commissioner more than once in the same year."

In *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), the Supreme Court reiterated that the Texas "key man" system for selecting grand juries is facially constitutional. See also, *Carter v. Jury Comm'n,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); *Akins v. Texas,* 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940). Appellant has made no showing that the selection of the Commissioners by the district judges constituted an abuse in this system, or that the system was unconstitutionally applied. See and compare *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). This contention is overruled.

Further, appellant has failed to show non-compliance with Article 19.01, supra. The testimony of the district judges who selected grand jury Commissioners over the years indicates nothing other than that they complied with the statute in selecting Commissioners. Appellant has

failed to show otherwise. This contention is overruled.

Finally, appellant contends that he has shown discrimination against blacks, Mexican-Americans and persons between 18–21 years of age in the selection of the grand jury Commissioners. Even if *Castaneda v. Partida* is applicable to the selection of Commissioners as well as to the selection of the grand jurors themselves, appellant has failed to establish a prima facie case of discrimination. This failure of proof is discussed in our review of appellant's first two grounds of error in our opinion on original submission. This contention is likewise overruled.[1]

In our opinion on original submission, we overruled appellant's fifth ground of error wherein he complained of the trial court excusing prospective jurors under V.T.C.A. Penal Code, Section 12.31(b), without first determining whether they were qualified under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We now hold that appellant failed to preserve any error relating to this ground. Prospective jurors Arlie Holman, Linda Newman, Maurice Cantu, Patricia Morgan, Laverne Russell, Angela Brennan, Mary Annette Davis and Ollie Grindell were all excused without objection by appellant. Failure to object to the improper exclusion of veniremen waives that right and such exclusion cannot be considered on appeal. *Hughes v. State,* 562 S.W.2d 857 (Tex.Cr.App.1978); *Shippy v. State,* 556 S.W.2d 246 (Tex.Cr.App.1977); *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr.App.1976). Error, if any, was also waived as to prospective juror Elizabeth Williams. Appellant made no attempt to show that she was qualified under *Witherspoon* or to show that she was excused in violation thereof.

---

1. In his motion for rehearing, appellant makes reference to some exhibits and grand jury records, which he contends supply proof of his claims. Appellant's evidence concerning his grounds of error relating to the grand jury system consisted of testimony taken in a hearing on this issue in another case. At the hearing on appellant's motions to quash his indictment, both appellant and the State stipulated to the introduction of the *testimony* taken previously. There was no mention of the inclusion of exhibits or grand jury records. Thus, the only evidence before this Court consists of the testimony of the witnesses at that previous hearing; other exhibits and grand jury records do not appear in the appellate record in the instant case.

The record does not reflect that appellant, over any objection, was denied an opportunity to elicit her feelings concerning the death penalty. See *Granviel v. State,* 552 S.W.2d 107 (Tex.Cr.App.1976). Appellant cannot complain on appeal on the basis of a ground not raised in the trial court. *Sloan v. State,* 515 S.W.2d 913 (Tex.Cr.App.1974); *Campbell v. State,* 492 S.W.2d 956 (Tex.Cr. App.1973). No error is presented for review in appellant's fifth ground of error.

Appellant's motion for rehearing is overruled and judgment is affirmed.