**Mark Milton MOORE,
Petitioner-Appellee,**

v.

**W. J. ESTELLE, Jr.,
Respondent-Appellant.**

No. 81–1241.

United States Court of Appeals,
Fifth Circuit.

March 12, 1982.

Leslie A. Benitez, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

James P. Finstrom, Dallas, Tex., for petitioner-appellee.

Jack Greenberg, Joel Berger, New York City, Anthony G. Amsterdam, Stanford, Cal., for amicus curiae (NAACP Legal Defense & Ed. Fund, Inc.)

Before BROWN, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

Again, as we did in *Burns v. Estelle,*[1] we confront a hideous and unprovoked murder; again, as in *Burns, Witherspoon v. Illinois*[2] and its progeny are in play; and again, as in *Burns,* we are forced to hold invalid a

---

**1.** 592 F.2d 1297 (5th Cir. 1979), *adhered to en banc,* 626 F.2d 396 (5th Cir. 1980).

**2.** 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

capital sentence which, given the limits of our merely human understanding, this brutal shotgun slaying of a helpless victim seems clearly to merit.

In response to Moore's habeas petition, the trial court held that three jurors were erroneously excluded under the *Witherspoon* tests. We need go no further than to examine the testimony of Katherine C. Kearby, one of these three, to conclude that at least one was wrongly excluded. As the court below correctly found, Ms. Kearby did not wish to serve in such a case. She maintained, however, that while she was reluctant to be a part of the proceeding and her feelings would "affect" her deliberations, still she "would answer the questions truthfully but I don't know that I would ever feel good about it." Near the end of her lengthy questioning, she summed up her position as "[i]f you make me do it, I'll do it right." Her exclusion was improper. *Burns v. Estelle, supra.*

The state argues, however, that the exclusions, if improper, should be viewed as harmless error, since the state went to trial with unexercised peremptory challenges sufficient to have covered any improperly excused jurors. That these would have been used had the jurors in question not been excluded for cause was attested to the court below by affidavit of the attorney who had prosecuted Moore's case some seven years earlier.

Tempted as we are to embrace the state's contentions, we find ourselves unable to do so. In the first place, the Supreme Court has clearly held, in a case where the state arguably retained a peremptory challenge, that the exclusion of even *one* venireman on grounds broader than those of *Witherspoon* precludes the imposition of the death penalty. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976). And though the Court's reasoning escapes us,[3] its holding, referred to by Justice Rehnquist in dissent as a per se rule, is clear and must be followed. In the second, and without in

the least calling in question the sincerity of the former prosecutor's affidavit assertions, we cannot countenance what amounts to an attempt to exercise—retroactively and by affidavit in defense of a collateral attack—peremptory challenges reserved at the time. The Court of Criminal Appeals of Texas has expressly rejected the state's attempt to exercise leftover peremptions on direct appeal. *Grijalva v. State*, 614 S.W.2d 420, 424–5 (Tex.Crim.App.1980) (en banc). It would be anomalous for us to countenance it in this far more attenuated situation; indeed, considerations of fundamental fairness might be implicated. What would have happened is seldom a subject of satisfactory proof; and we conclude that if in a capital case Texas is in doubt as to whether the trial court has properly excused a juror for cause, the time to balance adding a peremptory challenge to that juror against the unknown exigencies that may arise from the serial file of veniremen yet to be questioned has likely arrived.

AFFIRMED.

GOLDBERG, Circuit Judge, specially concurring:

I concur fully in Judge Gee's impeccable and unexceptionable analysis of the *Witherspoon* problem and his disposition of this case. However, I would like to offer a few thoughts in support of his conclusion regarding the "harmless error" issue.

The State of Texas virtually concedes that at least one of the veniremen in this capital case was erroneously excluded from the jury panel in violation of the guidelines set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). However, the State argues that since the prosecutor stood ready to use available peremptory challenges to exclude this same juror, the error was harmless beyond a reasonable doubt.

I concur with Judge Gee's finding that the State's argument is foreclosed by the

---

**3.** That supplied by Judge Goldberg's eloquent special concurrence goes far, however, to sup-

ply this.

Supreme Court's opinion in *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976) and our court's decision in *Burns v. Estelle*, 592 F.2d 1297 (5th Cir. 1979) *adhered to en banc*, 626 F.2d 396 (5th Cir. 1980). I agree that "the exclusion of even *one* venireman on grounds broader than *Witherspoon* precludes the imposition of the death penalty." *ante*, at 57.

As I would expect, Judge Gee has dutifully adhered to the rule set forth in *Davis v. Georgia*, supra, and *Burns v. Estelle, supra*. However, I note that he has done so with an expression of regret. I, on the other hand, have no such reservations, for I believe that even if we were not bound by principles of *stare decisis*, there would be sound reasons for rejecting the State's "harmless error" argument.

Texas contends that the erroneous exclusion of a particular venireman "for cause" was harmless beyond a reasonable doubt because the State stood ready to use an available peremptory challenge. In essence, the State argues that even if the trial court had acted properly and refused to excuse the venireman for cause, the prosecutor would have used a peremptory challenge to keep that prospective juror off the panel. Thus, the State maintains that the trial court's error could not have had any substantive effect since the venireman in question would have been excluded from the panel even if he had not been erroneously excused by the trial court.

In their "harmless error" argument, the State has assumed that the crucial question is whether *a particular venireman* was excluded from the jury panel as the result of the trial court's erroneous ruling. However, I believe that the State's syllogism is logically flawed. The proper focus of our inquiry is whether the composition of the *jury panel as a whole* could possibly have been affected by the trial court's error.

While it may be true that the exclusion of a particular venireman was not affected by the trial court's erroneous ruling, it does not necessarily follow that the composition of the entire jury panel was unaffected by the error.

In Texas capital cases, veniremen are examined *seriatum* by the defense and prosecution. "[P]rospective jurors . . . are examined individually and must be challenged and passed upon separately." *Pierson v. State*, 614 S.W.2d 102, 107 (1981). Thus, as a prospective juror comes before the court, the prosecutor must then and there decide whether she will accept the juror, challenge for cause, or exhaust one of her limited number of peremptories. Clearly, the prosecutor's strategic calculus is affected by the number of peremptory challenges left to her and by the number of jury panelists still awaiting selection. As the prosecutor depletes her limited number of peremptory challenges, she may be willing to accept certain jurors she might have otherwise rejected given a larger reserve of peremptories.

The import of this observation should be clear. Texas claims that it would have used three of its peremptory challenges to exclude the three jurors found to have been improperly excused for cause. However, even if we assume that the prosecutor in this case would have used those three additional peremptory challenges,[1] how can we know beyond a reasonable doubt that the selection of the remainder of the jury panel would have been unaffected? If the trial court had ruled properly and the prosecution had been forced to use these three additional peremptory challenges, it is entirely possible that the State would have chosen to acquiesce in the impaneling of other prospective jurors it actually challenged given the luxury of a pocketful of "peremptories."[2]

1. I agree with Judge Gee that ". . . without in the least calling into question the sincerity of the former prosecutor's affidavit assertions, we cannot countenance what amounts to an attempt to exercise—retroactively and by affidavit—peremptory challenges reserved at the time." *ante*, at 57.

2. A simple example will suffice to illustrate the point: Imagine that a prosecutor holds four remaining peremptory challenges. She can easily choose to use one of them to excuse a given prospective juror; however, if the prosecutor has already been forced to exhaust three of those "peremptories," she might think it

Thus, when a trial court erroneously excludes veniremen "for cause," it allows the prosecutor to save peremptory challenges it would otherwise have had to use to exclude those prospective jurors. Armed with more peremptory challenges than she would have had if the trial court had ruled correctly, a prosecutor may feel that she is in a position to exclude jurors she might otherwise have accepted. We can thus imagine a situation in which the composition of the jury panel *as a whole* could indeed have been affected by the erroneous ruling of the trial court. Therefore, we cannot say that such error can be characterized as harmless beyond a reasonable doubt.

I would also note that acceptance of the State's "harmless error" argument would be tantamount to insulating all jury selection error from any meaningful appellate review. Texas has asked us to adopt a rule which would in effect make all jury selection error "harmless" so long as the prosecutor can demonstrate that she was prepared to use an available peremptory challenge. However, if we were to accept this argument, we would be saying that a prosecutor could effectively insulate all jury selection error from any *habeas* or appellate review merely by asserting that she was ready to use an available peremptory challenge. One can readily predict what might happen if we were to adopt this position: prosecutors could routinely follow their challenges for cause with a note for the record asserting that the State would stand ready to use a peremptory in the event its "for cause" challenge was unsuccessful. The use of this strategem would result in our being unable to review any jury selection error, for all such error would be "harmless." *Habeas* and appellate courts would be left with no means to enforce the jury selection guidelines set down by the Supreme Court and *Witherspoon* would surely wither.

Having offered these thoughts in support of Judge Gee's analysis of the *Witherspoon*

prudent to acquiesce in the impaneling of a particular venireman, holding her remaining peremptory in reserve against the possibility of

problem, I would also add one final note. "I join the Court's opinion without ... departing from my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments." *Eddings v. Oklahoma,* —— U.S. ——, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982) (Brennan, J., concurring).

being confronted with an even more objectionable candidate.